UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMA CONSTRUCTION, INC., <br><br> Plaintiff, <br> v. <br><br> TEAMSTERS LOCAL 174, <br><br> Defendant. | CASE NO. 2:22-cv-01631-LK <br><br> ORDER DENYING MOTION TO AMEND |

This matter comes before the Court on Plaintiff OMA Construction, Inc.'s Motion for Leave to File Amended Complaint. Dkt. No. 24. Defendant Teamsters Local 174 opposes the motion. Dkt. No. 26. The Court denies the motion because OMA has not demonstrated good cause to amend six months after the deadline.

I.    BACKGROUND

OMA provides services related to construction projects, including for the Sound Transit Sounder Commuter and Link Light Rail Projects, in King County, Washington. Dkt. No. 1 at 2. Teamsters Local 174 ("Local 174" or the "Union") is a labor union that represents OMA's dump-truck drivers who haul materials to and from construction sites. Dkt. No. 1-6 at 3; Dkt. No. 28-1

ORDER DENYING MOTION TO AMEND - 1

at 103–04.

OMA and Local 174 are parties to a collective bargaining agreement ("CBA") as well as several project labor agreements ("PLAs") and Community Workforce Agreements ("CWAs"). Dkt. No. 1 at 2–6.[1] All of the agreements prohibit work stoppages and/or strikes. Dkt. No. 1 at 2–6; *see, e.g.*, Dkt. No. 1-1 at 25 (Sound Transit PLA).

This dispute arose when Union-represented employees participated in a five-month strike against five employers in the sand and gravel industry. Dkt. No. 25-1 at 2–3, 37; Dkt. No. 26 at 3; Dkt. No. 28-1 at 2. Although OMA was not one of those employers, it was still impacted by the strike. When OMA's truck drivers drove to collect materials from those employers at the "source sites," they were met with picketers who questioned them, called them "scabs," and briefly blocked their entrance and/or exit from the sites. Dkt. No. 25-1 at 3–4. OMA's drivers turned to the Union for advice about whether they could cross the picket lines to access the source sites but were "frustrated" because they "could not get a straight answer" from the Union. *Id.* at 4–5; *id.* at 21 (a Union steward told a worker that he "could not access these source locations because [he] could not cross the picket lines at these locations" even for PLA jobs, but later told the worker that he "could cross the picket lines for PLA work only.").

The parties exchanged emails about the issue. On December 6, 2021, Local 174's Senior Business Agent Carl Gasca wrote an email to OMA stating that "OMA's Teamsters-represented employees have the right, under both Section 7 of the [National Labor Relations Act] and their CBA, to honor any lawful primary picket line authorized and erected by Teamsters Local 174." Dkt. No. 28-1 at 2, 4. Thus, if Local 174 was asked by its members/OMA employees "whether they have this right, [Local 174 would] tell them that they do" and those employees might refuse

---

[1] OMA refers to the public works jobs under the PLAs and CWAs interchangeably as "PLA jobs." Dkt. No. 28-1 at 109.

ORDER DENYING MOTION TO AMEND - 2

"to cross a Teamsters picket line[.]" *Id.* at 2. On December 17, 2021, OMA dispatcher Charmaine Monk emailed OMA's General Manager John Cobun and its Vice President Brandon Akers stating that employee Dan Weaver refused to pick up materials and informed her that he "called Carl Gasca who told him not to cross the picket line[.]" *Id.* at 6, 44 (verification page with Akers' title), 35 (discovery responses with Coburn's title); *see also* Dkt. No. 25-1 at 27 (Weaver declaration stating that Gasca told him he "could not access these source locations because [he] could not cross the picket lines at these locations" regardless of whether they were PLA jobs; Weaver "informed Charmaine Monk that [he] could not access source locations because the Union instructed [him] that [he] could not cross the Union's picket lines.").

In addition to Weaver, other OMA employees did not cross the picket lines, including those who were unwilling to endure what they perceived to be "aggressive" conduct from the picketers or the "hassle" of crossing the picket lines. Dkt. No. 25-1 at 22; Dkt. No. 33 at 12–13. As a result, OMA "could not access materials to bring to job sites covered by the [PLAs]," which "effectively halted the Company's operations for the duration of the strike." Dkt. No. 33 at 7; *see also* Dkt. No. 28-1 at 26–27.

OMA filed this lawsuit on November 14, 2022, alleging that despite the contractual prohibition on strikes and work stoppages, Local 174 "initiated a work stoppage and/or strike" on December 3, 2021. Dkt. No. 1 at 6. OMA's complaint asserts two claims: (1) breach of the PLAs, *id.* at 6–8, and (2) breach of the CBA, *id.* at 8. After Local 174 answered, the Court set an April 20, 2023 deadline to amend the pleadings. Dkt. No. 16 at 1. OMA filed this motion on October 11, 2023 to add a claim for breach of the implied duty of good faith and fair dealing. Dkt. No. 24; Dkt. No. 24-2 at 9–10. It also seeks to add one factual allegation: "During the work stoppage and/or strike referenced in [the complaint], Defendant told its members that they could not cross the picket line at source locations." Dkt. No. 24-2 at 7.

ORDER DENYING MOTION TO AMEND - 3

## II. DISCUSSION

The Court has jurisdiction under the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). The Court first sets forth the relevant legal standards, and then addresses the timeliness of OMA's motion.

### A. Rule 16's Good Cause Standard

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). A schedule modification is appropriate only if the amended pleading deadline could not be met despite the diligence of the moving party. *Id.* Carelessness is incompatible with a finding of diligence. *Id.* The Court's inquiry thus focuses on the moving party's reasons for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id.*; *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017).

In assessing diligence, the Court may consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").[2] When that is the case, the Court

---

[2] The Court recognizes that this is identical to the undue delay inquiry under Rule 15. However, courts in this district have looked to the moving party's pre-existing knowledge of allegedly new facts and theories to measure diligence and, by extension, ascertain whether good cause exists under Rule 16. *See, e.g.*, *Kremerman v. Open Source Steel, LLC*, No. C17-953-BAT, 2018 WL 4700526, at *3–4 (W.D. Wash. Oct. 1, 2018); *MMMT Holdings Corp. v. NSGI*

1  may deny leave to amend. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir.
2  2000). The Court may likewise deny leave to amend if the plaintiff knew of the facts and theories
3  at issue sufficiently in advance of the deadline to timely assert them. *See, e.g*, *Seattle Pac. Indus.,*
4  *Inc. v. S3 Holding LLC*, 831 F. App'x 814, 816–17 (9th Cir. 2020) (party that moved for leave to
5  amend three months after the amended pleadings deadline failed to exercise diligence because it
6  could have asserted its proposed claims before that deadline); *Lockheed Martin Corp. v. Network*
7  *Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (denying leave to amend where plaintiff's motion
8  "came several months after the stipulated deadline for amending or supplementing the complaint"
9  and "[n]othing in the proposed amended complaint relied on facts that were unavailable before the
10 stipulated deadline."). In addition, "the existence or degree of prejudice to the party opposing the
11 modification might supply additional reasons to deny a motion[.]" *Mammoth Recreations*, 975
12 F.2d at 609.

### B.   OMA Was Not Diligent

OMA argues that it should be granted leave to amend under Rule 15 because it did not engage in undue delay and Local 174 will not be prejudiced by the amendment. Dkt. No. 24 at 2–3; Dkt. No. 29 at 2–3. However, because OMA's motion implicates both Rules 15 and 16, the Court does not consider whether amendment would be proper under Rule 15 unless OMA first satisfies Rule 16's more stringent "good cause" requirement." *Mammoth Recreations*, 975 F.2d at 608; *accord LifeLast, Inc. v. Charter Oak Fire Ins. Co.*, No. C14-1031-JLR, 2015 WL 12910683, at *2 (W.D. Wash. July 6, 2015).[3] OMA does not make it past that hurdle.

---

*Holdings, Inc.*, No. C12-01570-RSL, 2014 WL 2573290, at *3–4 (W.D. Wash. June 9, 2014).

[3] OMA relies on *Howey v. United States* to support its contention that its motion should be granted based on the lack of prejudice to Local 174, Dkt. No. 29 at 1–2, but "Howey only analyzed the requirements for leave to amend under Rule 15, not Rule 16, and is therefore inapplicable." *Nat'l Liab. & Fire Ins. Co. v. Pac. Window Corp.*, No. SACV 03-00608 JVS, 2008 WL 11340360, at *3 n.4 (C.D. Cal. May 12, 2008); *see also Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

ORDER DENYING MOTION TO AMEND - 5

1    OMA contends that its motion is timely because the "factual basis" for its new claim "is found within declarations that [it] obtained in July and September 2023, in the course of discovery and [its] investigation of the factual background regarding conduct by Defendant." Dkt. No. 24 at 2; *see* Dkt. No. 25-1 at 2–53 & Dkt. No. 33 at 5–15 (declarations).[4] Local 174 counters that OMA learned the relevant facts long before it moved to amend. Dkt. No. 26 at 5–7. In support of this argument, Local 174 cites the December 2021 emails discussed above and subsequent discovery responses in which OMA characterizes one such email as threatening to instruct OMA drivers not to cross the picket lines. *Id.* at 6 (citing Dkt. No. 28-1 at 5–45).[5]

The Court agrees with Local 174 that OMA has not demonstrated diligence or good cause to amend its complaint. Although OMA contends that it *obtained the declarations* in July and September 2023, Dkt. No. 24 at 2, the relevant question is when it *learned* the key information therein. *Acri*, 781 F.2d at 1398 (disapproving of amendments "when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."); *P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. CV14-09010-BRO (GJSx), 2016 WL 7017624, at *4 (C.D. Cal. Jan. 21, 2016) (collecting cases holding that plaintiffs were not diligent in seeking to amend when they delayed filing their motions to amend for two, three, and five months after obtaining knowledge of the facts necessary to support the proposed amendments). OMA does not dispute that it had knowledge in December 2021 that Local 174 had informed at least one OMA employee that he could not cross the picket lines. Dkt. No. 28-1 at 6. And three other employees state in their declarations that they informed Monk that Local 174 instructed them not to cross the

---

[4] None of the declarations OMA submitted are sworn under penalty of perjury as required by 28 U.S.C. § 1746(2). Nevertheless, the Court considers OMA's declarations because Local 174 did not object to them, and the result would not change even if the Court disregarded them. However, future noncompliant declarations may be stricken.

[5] Local 174's response brief attributes both an erroneous June 2022 date and a correct June 2023 date to the discovery responses. Dkt. No. 26 at 6; Dkt. No. 28-1 at 43, 70.

ORDER DENYING MOTION TO AMEND - 6

picket lines, further underscoring OMA's knowledge of the relevant facts. Dkt. No. 25-1 at 10 (OMA employee Craig Conrad stating that he "informed Charmaine Monk that [he] could not access source locations because the Union instructed [him] that [he] could not cross the Union's picket lines" and that Monk instead found other work for him that did not require crossing the picket lines); *id.* at 22 (OMA employee Shawn Hanna stating he informed Monk of the same); Dkt. No. 33 at 13 (same from Rob Longie). OMA reiterated those facts in its June 2023 discovery responses. *See, e.g.*, Dkt. No. 28-1 at 35. Despite such knowledge, OMA waited until October 2023 to file this motion to add its new claim and the lone factual allegation that "[d]uring the work stoppage and/or strike . . . , Defendant told its members that they could not cross the picket line at source locations." Dkt. No. 24-2 at 7.

OMA did not need to wait to obtain the declarations or duplicative accounts of the same conduct before it sought to amend its complaint. *See, e.g.*, *Denham v. Glob. Distrib. Servs., Inc.*, No. 18-cv-1495-LAB (MDD), 2020 WL 2218966, at *2 (S.D. Cal. May 6, 2020) (plaintiff lacked good cause to amend where proposed amendment was "not based on new information obtained after the cutoff date"); *Kremerman*, 2018 WL 4700526, at *4 (plaintiff failed to show good cause because he was aware of the facts at issue before the amended pleadings deadline and "nothing stopped [him] from making th[ose] allegations . . . within the prescribed time"); *George v. Wright, Lerch & Litow, LLP*, No. 1:15-cv-00811-JMS-DML, 2016 WL 10514739, at *2 (S.D. Ind. May 10, 2016) (the plaintiff's "suggestion that she first needed the defendant to 'confirm' or 'cement' the meaning of the defendant's notes before she could evaluate whether to bring a claim [wa]s not plausible."). To the extent OMA was concerned about strengthening its position with additional evidence, it could have pleaded the claim on information and belief—a standard practice. *See Edwards Lifesciences LLC v. Cook Inc.*, No. C-03-03817-JSW, 2008 WL 913328, at *3 (N.D. Cal. Apr. 2, 2008) (rejecting party's argument that it lacked facts to prove element of claim in original

pleading because it could have pleaded the claim on information and belief).

OMA has not demonstrated diligence because the evidence indicates that it was aware of the relevant facts more than two years before it sought to amend its complaint. Because it was not diligent, the inquiry ends. *Mammoth Recreations*, 975 F.2d at 609.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES OMA Construction, Inc.'s Motion for Leave to File Amended Complaint. Dkt. No. 24.

Dated this 27th day of November, 2023.

Lauren King
United States District Judge